AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**DISTRICT OF** Massachusetts

UNITED STATES OF AMERICA

V.

CARLOS JOSE ARIAS, and
ADONIS RODRIGUEZ

**CRIMINAL COMPLAINT**

CASE NUMBER: 05M-1013-JGD

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November 2003 to January 2004 in Essex county, in the District of Massachusetts defendant(s) did, (Track Statutory Language of Offense) knowingly, and intentionally conspire to distribute, and to possess with intent to distribute, cocaine, a Schedule II controlled substance, and did knowingly and intentionally distribute cocaine, a scedule II controlled substance

in violation of Title 21 United States Code, Section(s) 841(a)(1) and 846.

I further state that I am a(n) DEA Special Agent and that this complaint is based on the following
 Official Title
facts:

See Affidavit of Steven C. Story attached hereto and incorporated by reference herein.made part herof.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_Steven C. Story_
Signature of Complainant

Sworn to before me and subscribed in my presence,

02-04-2005                               at                    Boston, MA
Date                                                          City and State

JUDITH GAIL DEIN, U.S. MAGISTRATE JUDGE      _Judith Gail Dein_
Name & Title of Judicial Officer             Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## Affidavit of Steven C. Story

I, Steven C. Story, on oath depose and state that:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and I have been so employed for approximately 18 years. During the course of my career, I have received specialized training from DEA and I have been involved in over 400 drug investigations involving the use of various investigative techniques, including controlled purchases of narcotics, the use of confidential informants and other cooperators, physical surveillance, electronic surveillance, and financial investigations. Since June 2003, I have been assigned to the Mobile Enforcement Team ("MET") of the DEA New England Field Division. Between October 2003 and September 2004, the MET conducted an investigation of certain narcotics dealers operating in the North Shore area of Boston, for which I was one of the assigned case agents.

2. From November 2003 through April 2004, I was involved in an investigation of **Carlos Jose Arias ("Arias")**, a 33-year old man also known as "C.J." who resides in Lynn, MA, and **Adonis Rodriguez ("Rodriguez")**, a 36-year old man also known as "Al" who resides in Peabody, MA. The information set forth in this affidavit is based on my personal participation in this investigation, as well as on information provided to me by other DEA agents, law enforcement officers, and public and private databases. I am submitting this affidavit in support of a Criminal Complaint charging **Arias** and **Rodriguez** with participating in a conspiracy to distribute cocaine. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that, from in or about November 2003 to in or about January 2004, **Arias** and **Rodriguez** conspired with each other to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. Section 846, and that they distributed cocaine, in violation of 21 U.S.C. Section 841(a)(1). To make the required showing of probable cause, this affidavit includes a description of seven undercover cocaine purchases that undercover DEA Task Force Agents made from **Arias**, and two undercover cocaine purchases from **Rodriguez**, during the late fall and early winter of 2003. In light of the limited purpose for which this affidavit is being submitted, I have not included each and every fact known to me concerning the government's investigation of **Arias** and **Rodriguez**'s drug dealing activities.

### Undercover Purchase of Cocaine from Arias on November 12, 2003 in Peabody, MA

3. On November 12, 2003, at approximately 5:50 p.m., an undercover DEA Task Force Agent ("UCA1") had an unrecorded telephone conversation with **Arias**, who agreed to sell UCA1 cocaine that evening. It was agreed that the proposed cocaine sale would take place in the Centennial Park industrial complex in Peabody, MA. UCA1 then drove to Centennial Park under the surveillance of several agents and officers. UCA1 placed a series of calls to **Arias**'s cellular telephone to apprise him that UCA1 was awaiting Arias to arrive at the previously agreed location. During the final telephone

1

conversation, Arias told UCA1 that he was only minutes away from Centennial Park, and he would be meeting shortly with UCA1.

4. At approximately 6:50 p.m., **Arias** arrived at UCA1's location as the operator and sole occupant of a green 1993 Honda Accord, bearing Massachusetts registration 23VZ17. [A subsequent computer query of the Massachusetts Registry of Motor Vehicles revealed that the subject Honda Accord was listed to Carlos Arias at 14 Clovelly Street, Apartment 2, Lynn, MA.] **Arias** indicated to UCA1 to follow behind his vehicle as Arias drove further into the industrial complex. UCA1 understood that **Arias** was conducting counter-surveillance of the area as **Arias** led the UCA1 through a series of sudden turns in the vacant business parking lots. **Arias** finally parked in a business driveway facing in the opposite direction of UCA1, and **Arias** waived to UCA1 to pull his undercover vehicle alongside the Honda. UCA1 then provided **Arias** with $160 in cash, and **Arias** handed UCA1 four small baggies containing cocaine. After this quick hand-to-hand transaction, **Arias** drove from Centennial Park at a high rate of speed.

5. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Carlos **Arias** on 11-12-03 was 1.6 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Rodriguez on November 17, 2003 in Peabody, MA

6. On November 17, 2003, at approximately 4:20 p.m., an undercover DEA Task Force Agent ("UCA2") placed a recorded telephone call to **Rodriguez**, who agreed to sell UCA2 cocaine that evening. **Rodriguez** instructed UCA2 to travel to Centennial Park within twenty-five minutes, and then call **Rodriguez** again once UCA2 had arrived at the designated location. UCA2 then drove to Centennial Park under the surveillance of several agents and officers. UCA2 called Rodriguez's cellular telephone and told him that UCA2 was at the previously agreed location. **Rodriguez** told UCA2 that he would arrive in Centennial Park within five to ten minutes.

7. At approximately 4:55 p.m., **Rodriguez** arrived at UCA2's location as the operator and sole occupant of a blue 1993 Ford Taurus, bearing Massachusetts registration 25XG08. [A subsequent computer query of the Massachusetts Registry of Motor Vehicles revealed that the subject Ford Taurus was listed to Teresa Rivera at 31 Perkins Street, Apartment 7, Salem, MA.] **Rodriguez** nodded to UCA2, and UCA2 began following **Rodriguez**'s vehicle through the industrial complex. **Rodriguez** parked along a business access road, then UCA2 got out of the undercover vehicle and approached the driver's side window of the Ford Taurus. Rodriguez told UCA2 that the cocaine was packaged in paper, and he handed UCA2 an envelope which each containing ten folded paper packages of cocaine. UCA2 then provided **Rodriguez** with $400 in cash.

8. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Adonis **Rodriguez** on 11-17-03 was 5.0 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Arias on November 18, 2003 in Peabody, MA

9. On November 18, 2003, at approximately 5:25 p.m., UCA1 placed a recorded telephone call to **Arias**, who agreed to sell UCA1 cocaine that evening in Centennial Park. UCA1 then drove to Centennial Park under the surveillance of several agents and officers. UCA1 called Arias's cellular telephone to tell him that UCA1 had arrived at the previously agreed location, and **Arias** said that he would meet UCA1 in five minutes. At approximately 6:10 p.m., **Arias** arrived at UCA1's location as the operator and sole occupant of his previously described green Honda Accord. **Arias** waived to UCA1 to follow behind his vehicle as Arias drove to another location within the industrial complex. **Arias** parked along a business access road facing in the opposite direction of UCA1. UCA1 got out of the undercover vehicle and approached the open driver's side window of **Arias**' Honda. UCA1 then provided **Arias** with $400 in cash, and **Arias** handed UCA1 ten small baggies containing cocaine.

10. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Carlos **Arias** on 11-18-03 was 4.5 grams of cocaine hydrochloride.

### Undercover Purchases of Cocaine from Arias on November 20, 2003 in Peabody, MA

11. On November 20, 2003, at approximately 4:30 p.m., UCA2 placed a recorded telephone call to **Rodriguez** and ordered "twenty [$40] bags" of cocaine for later that evening. Rodriguez informed UCA2 that he only had "ten bags" immediately available, which UCA2 agreed to purchase. Rodriguez instructed UCA2 to "go to the same place," which UCA2 understood to be Centennial Park. UCA2 then drove to Centennial Park under the surveillance of several agents and officers. At approximately 5:05 p.m., UCA2 called Rodriguez's cellular telephone and told him that UCA2 was at the previously agreed location. **Rodriguez** responded that he would meet with UCA2 in ten to fifteen minutes.

12. At approximately 5:20 p.m., UCA2 observed Arias' green Honda Accord pull along the undercover vehicle. UCA2 followed the subject Honda to the same business access road used during prior transactions. UCA2 got out of the undercover vehicle and approached the driver's side window of the Honda. UCA2 observed that the driver and sole occupant of the Honda was **Arias**, rather than **Rodriguez** [with whom UCA2 had placed the cocaine order earlier that evening]. **Arias** provided UCA2 with ten small baggies of cocaine, and UCA2 gave **Arias** $400 in cash. UCA2 told **Arias** that he had

3

originally ordered "twenty bags" from **Rodriguez**, who had told UCA2 that he only had "ten bags" ready. UCA2 then displayed $700 in remaining cash to **Arias**, and explained that he still wanted to purchase a larger quantity of cocaine. UCA2 and **Arias** negotiated a deal for "twenty more bags" of cocaine for $700. **Arias** instructed UCA2 to call him in ten minutes to arrange this proposed second cocaine transaction of the evening. **Arias** then drove from the Centennial Park area.

13. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the first substance purchased from Carlos **Arias** on 11-20-03 was 4.5 grams of cocaine hydrochloride.

14. Surveillance agents and officers followed **Arias** as he traveled from Centennial Park in Peabody to the Pump 'N Pantry Citgo gas station on Route 1 in Peabody. **Arias** briefly entered the Pump 'N Panty store, and returned to his vehicle moments later. **Arias** re-located his Honda to the rear of the gas station where he remained parked for several minutes. **Arias** then drove from the gas station back to Centennial Park. Upon Arias' return to Centennial Park, UCA2 placed a call to Arias' cellular telephone. **Arias** told UCA2 that he would meet him "in the same place in two minutes."

15. UCA2 traveled to the same business access road, and encountered **Arias** as he was driving down from the upper parking lot. **Arias** pulled alongside UCA2's vehicle so the two cars were positioned driver's side window facing driver's side window. **Arias** informed UCA2 that he only had "fifteen bags." UCA2 re-negotiated a purchase price of $520 for the fifteen bags [rather than the retail value of $580], to which Arias agreed. UCA2 then handed Arias $520 in cash, and **Arias** provided UCA2 with fifteen small baggies of cocaine. UCA2 discussed the possibility of **Arias** making future cocaine deliveries closer to the Gloucester area. **Arias** requested that UCA2 refrain from telling his "brother [**Rodriguez**]" about the discounted price **Arias** had given UCA2. UCA2 replied that he "won't say anything to Al [**Rodriguez**]."

16. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the second substance purchased from Carlos **Arias** on 11-20-03 was 6.7 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Rodriguez on November 24, 2003 in Peabody, MA

17. On November 24, 2003, at approximately 6:10 p.m., UCA2 placed a recorded telephone call to **Rodriguez** and ordered "ten [$40] bags" of cocaine for later that evening. Rodriguez instructed UCA2 to call him once UCA2 arrived at "the mailboxes," which UCA2 understood to be Centennial Park in Peabody. UCA2 then drove to Centennial Park under the surveillance of several agents and officers. At approximately 6:50 p.m., UCA2 called Rodriguez's cellular telephone and told him that UCA2 was at the previously agreed location. About ten minutes later, a black pick-up truck pulled alongside the undercover vehicle, at which time UCA2 observed that the truck was being

operated by unidentified white male who had **Rodriguez** as his sole passenger. **Rodriguez** waved to UCA2 to follow the pick-up truck further into the industrial complex. The truck eventually pulled over on a business access road, where UCA2 parked and approached the passenger side to speak with **Rodriguez**. **Rodriguez** handed UCA2 a bag containing ten small baggies of cocaine, for which UCA2 provided **Rodriguez** with $360 in cash. UCA2 told **Rodriguez** that he wanted to purchase more cocaine that evening, at which time the unidentified driver told **Rodriguez** that they "had to go." **Rodriguez** told UCA2 to call him later that evening to arrange another deal, and the pick-up truck then quickly sped from the area.

18. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Adonis **Rodriguez** on 11-24-03 was 4.2 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Arias on November 24, 2003 in Peabody, MA

19. Moments after UCA2 completed the [11-24-03] cocaine transaction with **Rodriguez**, surveillance agents observed **Arias** operating his green Honda Accord within Centennial Park. Based on this observation, UCA2 placed a recorded call to **Arias**' cellular phone, at which time **Arias** offered to sell UCA2 twenty-five "[$40] bags" of cocaine for $800. UCA2 told **Arias** that he would call him back from a location within Centennial Park when he was ready to complete the proposed deal. At approximately 8:15 p.m., UCA2 called **Arias** to tell him that he was waiting at the Marriott hotel parking lot, and **Arias** replied that he would be there in two minutes. At approximately 8:20 p.m., **Arias** mistakenly called UCA1 and said that he was waiting on the nearby business access road where prior deals had been conducted. UCA1 relayed this information to UCA2, who then drove to that location. Upon UCA2's arrival, **Arias** began driving down the access road in the direction of UCA2, and the two vehicles stopped adjacent to each other. As they met driver's side window to driver's side window, UCA2 handed **Arias** $800 in cash, while **Arias** handed UCA2 a napkin containing twenty-five small baggies of cocaine. UCA2 discussed the cost of purchasing an ounce of cocaine from **Arias** in the future. **Arias** told UCA2 that he could supply him with that quantity of cocaine, however **Arias** did not want UCA2 to discuss that size transaction with his "brother, Al [**Rodriguez**]." UCA2 assured **Arias** that he preferred to deal directly with **Arias**, rather than him doing business with "Al [**Rodriguez**]."

20. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Carlos **Arias** on 11-24-03 was 4.2 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Arias on December 10, 2003 in Danvers, MA

21. On December 10, 2003, at approximately 7:10 p.m., UCA2 had an unrecorded telephone conversation with **Arias**, who agreed to sell UCA2 cocaine that

evening. It was agreed that the proposed cocaine sale would take place at the 99 Restaurant in Danvers, MA. UCA2 later traveled to the 99 Restaurant parking lot under the surveillance of several agents and officers. At approximately 8:10 p.m., UCA2 called to **Arias**'s cellular telephone to apprise him that UCA2 was awaiting **Arias** to arrive at the previously agreed location. Within minutes, UCA2 observed **Arias** arrive in the restaurant parking lot as the operator and sole occupant of his green Honda Accord. UCA2 then saw **Arias** flash the high beam headlights of the subject Honda in an apparent signal intended on getting UCA2's attention, then **Arias** waved to UCA2 to follow his vehicle from the restaurant. As UCA2 traveled behind **Arias** away from the Liberty Tree Mall, UCA2 called **Arias** to negotiate a nearby location to conduct the proposed cocaine transaction. It was then agreed to pull into the parking lot of the Burger King on Endicott Street in Danvers. Once at that location, UCA2 got out of his undercover vehicle and approached the passenger side of Arias' Honda. **Arias** handed UCA2 a McDonald's bag containing seventeen small baggies of cocaine, then UCA2 provided Arias with $500 in cash. UCA2 concluded the transaction with a request that **Arias** make future multi-ounce cocaine deliveries to UCA2 in Gloucester, MA. **Arias** replied that he could "bring [UCA2] a package" the next day, and UCA2 agreed to call **Arias** on 12-10-03 to finalize the arrangements.

22. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Carlos **Arias** on 12-10-03 was 7.4 grams of cocaine hydrochloride.

### Undercover Purchase of Cocaine from Arias on December 15, 2003 in Danvers, MA

23. On December 15, 2003, at approximately 6:00 p.m., UCA2 placed a recorded telephone call to **Arias** and ordered "thirty [$40] bags" of cocaine for later that evening. It was agreed that the proposed cocaine sale would take place in the vacant parking lot of the former Decathlon sports store in Danvers, MA. UCA2 then drove to area of High Street and Route 128, while under the surveillance of several agents and officers. At approximately 7:25 p.m., UCA2 called **Arias** who explained that he was at the Kentucky Fried Chicken restaurant across the street from the former Decathlon store. UCA2 told **Arias** that he would meet him in the KFC within minutes. UCA2 pulled into the restaurant parking lot and observed **Arias** to be the operator and sole occupant of his subject Honda Accord. UCA2 approached the passenger side of the Honda, and **Arias** opened the door and handed UCA2 a coffee cup containing the requested thirty "bags" of cocaine. UCA2 handed **Arias** $900 in cash, and the meeting was concluded.

24. Subsequent analysis by the DEA Northeast Regional Laboratory determined that the substance purchased from Carlos **Arias** on 12-15-03 was 14.1 grams of cocaine hydrochloride.

## Conclusion

25. Based on the foregoing, all of which is true and accurate to the best of my knowledge, information and belief, there is probable cause to believe that **Carlos Arias** and **Adonis Rodriguez** participated in a conspiracy to distribute cocaine in violation of 21 U.S.C. Section 846 and that they did distribute cocaine, in violation of 21 U.S.C. Section 841(a)(1), as charged in the accompanying Criminal Complaint.

_____
Steven C. Story, Special Agent
Drug Enforcement Administration


Sworn to and subscribed before me this 4th day of February 2005.


_____
JUDITH GAIL DEIN
U.S. MAGISTRATE JUDGE